### Sanford B. Grant *vs.* Joseph Lyman.

A creditor caused the goods of his debtor to be attached, and the officer took a receipt therefor : The debtor then mortgaged the same goods to another creditor, and afterwards applied for the benefit of the insolvent act, (*St.* 1838, *c.* 163,) and all his estate was thereupon assigned under said statute : The attaching creditor afterwards recovered judgment, and took out a writ of execution which the attaching officer returned wholly unsatisfied. *Held,* that as the attachment was dissolved by the assignment, the attaching creditor had no cause of action against the officer, although the attached goods never came into the possession of the debtor's assignees, but were applied in discharge of the debt due to the mortgagee.

Where an officer is sued for not keeping attached goods, so that they might be forth coming to satisfy an execution, and he shows in defence, for the purpose of proving a dissolution of the attachment, that the estate of the judgment debtor was assigned before judgment, under *St.* 1838, *c.* 163, the plaintiff cannot be permitted to contest the validity of the assignment, by showing irregularities and errors in the proceedings, had against the debtor, under the statute.

An assignment under *St.* 1838, *c.* 163, dissolves an attachment of the insolvent debtor's property, though made by a citizen of another State in an action for breach of a contract to be performed in that State.

Trespass upon the case against the sheriff of Hampshire for an alleged default of William W. Partridge, one of his deputies. It was in evidence, at the trial in the court of common pleas,

before *Warren*, J. that the plaintiff, in November and December 1838, sued out and delivered to said Partridge, for service, several writs against Luther Clapp, Thaddeus Clapp, and Heman Pomroy, and that upon some of those writs said Partridge returned attachments of personal property ; that the plaintiff duly entered said writs in the court to which they were returnable, and prosecuted his suits to final judgments, which were rendered therein in April 1840 ; that executions issued on said judgments, and were delivered to said Partridge within 30 days after the judgments were rendered ; that said Partridge did not keep the property attached by him on said writs, nor seize it upon said executions, but returned the executions wholly unsatisfied.

The plaintiff gave evidence, that the suits, on which said attachments were made, were to recover money which he had been obliged to pay and had paid on certain notes indorsed by him for the accommodation of said Luther, Thaddeus, and Heman, which notes were made payable, and were paid by him, at a bank in Hartford, in the State of Connecticut ; and that he then was, and ever since has been, a citizen of that State.

The defendant then gave evidence, that before the rendition of the judgments aforesaid, namely, on the 24th of January 1840, said Luther Clapp applied to the judge of probate for the county of Hampshire for the benefit of the insolvent act of 1838, c. 163, who, on the same day, issued a warrant to a messenger to take possession of said Luther's estate, and on the 5th of February following, executed an assignment thereof to assignees chosen by said Luther's creditors. It was also shown that similar proceedings were had in relation to the estates of the said Thaddeus Clapp and Heman Pomroy, before the rendition of said judgments.

The defendant thereupon contended that these proceedings under the insolvent law dissolved said attachments and discharged him from any liability to the plaintiff, for the property attached. But the plaintiff insisted that said proceedings were invalid and constituted no defence to this action ; and he suggested several irregularities and defects in those proceedings. The judge overruled the objection.

The plaintiff then offered to prove that said Partridge permitted the property, attached by him on the plaintiff's writs aforesaid, to remain in the hands of the several debtors — taking a receipt therefor; and that said attached property, afterwards, and before the said proceedings under the insolvent act, had been conveyed in mortgage, by the said debtors, to certain of their creditors, and the proceeds thereof applied to the discharge of the debts due to said creditors; so that none of said property came to the possession of the messengers appointed by the judge of probate, or passed to the assignees by virtue of the assignments made as above mentioned.

This evidence was ruled to be inadmissible, and the jury were instructed, that the said proceedings under the insolvent law constituted a sufficient defence to the action; and the jury returned a verdict for the defendant. To this ruling and these instructions the plaintiff alleged exceptions.

*Boise & W. G. Bates*, for the plaintiff.

*Wells & R. A. Chapman*, for the defendant.

SHAW, C. J. The first question in this case turns upon the regularity of the insolvent proceedings against the debtors. It is an action against the sheriff for the default of his deputy, who had attached property on mesne process, at the suit of the plaintiff, for not keeping it and having it forthcoming to satisfy the plaintiff's executions. The answer, on the part of the defendant, for his deputy and himself, is, that after the attachment, and before the plaintiff recovered judgment, proceedings were instituted under the insolvent law of 1838, under which all the debtors' property was assigned, by means of which, and by force of the statute, the plaintiff's attachment was dissolved. The plaintiff insisted that these proceedings were invalid and void, on the ground of various irregularities on the part of the judge of probate, the clerk, the messenger, the assignee and the insolvents themselves, in not complying strictly with the requisitions of the statute.

The court are of opinion, that these irregularities are not open to inquiry in this suit, and that they were rightly overruled by the judge of the court of common pleas. We do not say

Grant *v.* Lyman.

that this inquiry into the regularity of the proceedings might not be proper in a suit which any person aggrieved has power to institute, with a direct view to annul and set aside the proceedings. But this is a suit against the sheriff, and the gravamen is, that the deputy ought to have detained the goods and had them forthcoming, notwithstanding the assignment, because the acts and doings of various persons connected with the insolvent proceedings were irregular. But this would have been no defence by the attaching officer against the assignees claiming the goods. The provision of the insolvent law, *St.* 1838, *c.* 163, § 5, is express, that in all suits by the assignees for any right or interest of the insolvent debtor, the assignment shall be conclusive evidence of their authority to sue as assignees. In any suit brought by the assignees against the officer for the property, he could not have shown these irregularities, nor have drawn them into question ; they therefore cannot be drawn into question in a suit against the officer. Whether the proceedings were irregular, or not, in the instances specified, and on the grounds relied on, we give no opinion.

The next question is, whether these insolvent proceedings against the debtors, and an assignment under them, before the plaintiff recovered judgment, constitute a good defence to the present action ; and the court are of opinion that they do. The assignments vested in the assignees all the property of the debtors which they could, by any way or means, have lawfully sold, assigned or conveyed, *or which might have been taken in execution on any judgment against them.* This last clause describes a species of property which a debtor could not convey, but which might be taken in execution against him, namely, property which he had fraudulently conveyed, without adequate consideration — such a conveyance of property, which would be good against himself, but which his creditors might attach or take on execution. This it was intended to pass to the assignees, for the general benefit of the creditors. The same clause further provides, that such assignment shall extend to and include property attached on mesne process, and shall dissolve any such attachment. This provision extends to cases where

40 *

an attachment was pending when the proceedings commenced. *Bigelow* v. *Pritchard*, 21 Pick. 169.

The attachment being thus dissolved, all the consequences of such dissolution must necessarily follow, and it must have its effect upon the rights and claims of all persons which dependeo upon it. The sheriff and his bailee — who could hold property only in virtue of the subsistence of a valid attachment — after such dissolution could hold it no longer. Those who had claims upon them depending upon their right, power and duty to hold such attached property, could assert their claims no farther. *Sprague* v. *Wheatland*, 3 Met. 416. And whether the property, of which the attachment was thus dissolved, came to the assignees, or was claimed by them, is immaterial in this case, because the plaintiff's claim to it being gone, it cannot affect his rights, that it may not go to the person entitled to it.

But it is then urged, and the argument is certainly a plausible one, that the only purpose of dissolving the attachment must have been, to let in the general creditors to the proceeds of property in which the attaching creditor would claim an exclusive right; and therefore, unless the property was so situated that the assignees could obtain it, the reason for dissolving the attachment would not exist. Certainly it could not have been the purpose of the legislature to dissolve the prior attachment of one individual creditor, in order to let in the subsequent mortgage of another individual creditor. But yet the words of the statute are positive and explicit, that it shall dissolve the attachment, without condition or qualification. It was probably a case overlooked, and it was provided for by the amending act, *St.* 1841, *c.* 124, § 5. There it is provided, that if it shall appear to the judge or master — that is, no doubt, upon the representation of the assignees, or others acting for the creditors — that the dissolution of any attachment would prevent the attached property from passing to the hands of the assignees, the attachment, upon his order, shall survive, and the assignees shall have power to proceed with the suit to judgment and execution, and the amount recovered shall vest in the assignees. This shows clearly, that in the view of the legislature, as the law

stood before this amendment, a dissolution of the attachment would let in a subsequent mortgage or sale, without benefiting the general creditors; and the amendment was introduced to guard against that consequence, by giving to the judge or master a power so to direct the prosecution as to maintain the prior right secured by the attachment for a particular creditor, and extend the benefit of it to all the creditors alike.

Whether this act, which passed March 18th 1841, was in force before the judgments in the present case, April term 1841, were taken, or not, does not appear. If it was, then the assignees might have availed themselves of it to secure the benefit of the attachment for the general creditors. If it was not, then there was no law to prevent the unqualified operation of the previous law, by which the attachment was dissolved to all effects and consequences.

It was contended that this provision ought not to extend to and bind the plaintiff, because he is a citizen of another State, seeking to recover on a contract made and to be performed in another State.

Were this a question whether the certificate of discharge, obtained by the debtors under the insolvent law of this Commonwealth, would bar the plaintiff's action, it would be a question of very different character, depending on other reasons. But the plaintiff comes into this State to seek his remedy, and he must take such remedy as the law of this State will give him. The law of the place must necessarily govern and direct the remedy. The process, arrest, attachment, trustee process, summons, all belong to the matter of remedy. Had the plaintiff made his attachment before the insolvent law went into operation, it would have presented a different, though perhaps not a difficult question. As it is, the plaintiff, whilst the insolvent law was in force, came into Massachusetts and attached property. The effect of that attachment was, to bind that property as security for such debt as he should recover, subject, however, at any time before judgment, to be defeated by the insolvency of his debtors. The defeasance was co-extensive with the charge on the property, and by the happening of the condition

it was released. We think that in the matter of remedy the plaintiff has justice done him, if he has an equal privilege with our own citizens.

Another ground, relied on for the support of the action, which avoids the proceedings under the insolvent act, is this ; that before these proceedings were instituted, the plaintiffs had a cause of action arising from the negligence of the defendant's deputy ; and if, by reason of the subsequent dissolution of the attachment, he should be held not entitled to full damages, he is at least entitled to a judgment for nominal damages. It proceeds upon the assumption, that by the delivery of the attached goods to another person by the deputy, taking his receipt for them, by means of which they were delivered back to the debtors, who were thereby enabled to mortgage them, a wrong was done to the plaintiff, upon which he has an immediate right of action.

It appears to us that this is quite untenable, for several reasons. It is very clear that an attaching creditor acquires no interest in the property ; his sole right is to have it forthcoming to satisfy his execution. It is not the duty of the officer to keep the property in his own custody, though, as it is at his risk, he may do it. If he deliver it to a bailee to keep, he is responsible for the sufficiency of the bailee, but he does no wrong to the creditor. The property is still in the custody of the law. The officer has a special property, so far as is necessary to enable him to perform his duty to both parties, and protect the property ; but the general property is not changed. *Ladd* v. *North*, 2 Mass. 517. *Blake* v. *Shaw*, 7 Mass. 505. *Knap* v *Sprague*, 9 Mass. 258. Yelv. (Amer. ed.) 44 *a, note.*

But it is conceived, that if the officer should deliver back the attached property to the debtor, taking other security for his own indemnity or otherwise, he may act imprudently ; he may increase his own risk ; but he violates no right of the plaintiff. He may be well assured that the plaintiff will never recover judgment, or that the defendant has ample means to satisfy it ; or he may have a satisfactory bond. Until, therefore, the plaintiff shall recover judgment, obtain execution, and make demand

of the goods within 30 days, he can suffer no loss ; and if his right to make such demand is gone by reason of the dissolution of his attachment, he has no cause of action.

Again ; this is an action on the case, and the gist of the action is damage sustained. There are cases, no doubt, where an action on the case will lie, and nominal damage be recovered, where the plaintiff has sustained no real damage ; as where the defendant has obstructed the plaintiff's right of way, or diverted his water-course, or intercepted his light, without any damage capable of being particularly proved. In such cases, the plaintiff's right is violated, and the law implies damage ; and besides, he must have a remedy by action, otherwise he might lose his right, by long adverse user, without remedy. But in an action against the sheriff, for not keeping goods attached, the ground of the action is the negligence of the defendant ; yet though the defendant have been ever so negligent, the plaintiff has no cause of action against him on that account, unless he has suffered damage from that cause. He must declare with a *per quod*, as it is termed, and after averring the negligence must allege that he has by *means thereof* sustained the damage set forth ; and this allegation must be proved. Actual damage therefore is the gist of the action.

But the plaintiff insists, that by reason of thus delivering up the property to receiptors, though they were responsible, the property was thereby restored to the debtor, by means of which he was enabled to mortgage it, so that the attaching creditor lost the benefit of it, and the general creditors did not obtain it. To this, it is a sufficient answer to say, that if this plaintiff, as attaching creditor, could not avail himself of the property, to satisfy his debt, the present defendant is not responsible in this action, whatever appropriation the debtor, under his disposing power, as general owner, might make of it. Besides, the attachment would not prevent the debtor from conveying, mortgaging or assigning the property, subject to the attachment ; and then it was not the repossession of it by the debtor, which enabled him to make the mortgage complained of. *Fettyplace v. Dutch,* 13 Pick. 388. *Arnold v. Brown,* 24 Pick. 89.

*Exceptions overruled*